**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| ADELA JOUBERT-VAZQUEZ, *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> ZOIME ALVAREZ-RUBIO, *et al.* <br><br> Defendants. | **Civil No. 11-1194 (SEC)** |

**OPINION and ORDER**

Before the Court are defendants' motion requesting abstention (Docket # 20), plaintiffs' opposition thereto (Docket # 22), defendants' reply (Docket # 31), and plaintiffs' sur-reply (Docket # 39). For the reasons discussed below, defendants' motion is **DENIED**.

**Factual and Procedural Background**

According to the complaint, plaintiffs ("Plaintiffs") are 60 employees of the Puerto Rico State Insurance Fund Corporation ("SIFC") who were demoted from career managerial positions. Docket # 1. Plaintiffs were appointed to these positions between 2003 and 2008 pursuant to an internal job announcement procedure whereby only SIFC employees and former employees were qualified to compete for the vacancies. Id. Previously, Plaintiffs had held career positions at the SIFC—some managerial, some not. Id.

Defendants are the SIFC itself; the SIFC Administrator, Zoimé Alvarez-Rubio ("Alvarez"); and the SIFC Director of Human Resources, Saúl Rivera-Rivera, ("Rivera") (collectively "Defendants"). Id. Shortly after taking office, Alvarez ordered an audit of the appointments made at the SIFC between January 2001 and December 2008. Id. Allegedly, she commissioned some of her most trusted lieutenants to gather information about the political affiliations of SIFC managerial employees appointed during the previousPopular Democratic Party Administrations ("PDP"). Id. Moreover, Plaintiffs allege that the period from 2001 to 2008 was chosen for the audit to spare employees appointed by previous New

CIVIL NO. 11-1194 (SEC)                                                                                  Page 2

Progressive Party ("NPP") Administrations. Id. Plaintiffs also aver that the goal of this scheme, shared by Alvarez and Rivera, was to replace employees loyal to the PDP with employees loyal to the NPP and Governor Fortuño. Id.

To that end, Plaintiffs were served with "letters of intent to demote," stating that their appointments were legal nullities, because the vacancies had not been publicly announced, as purportedly required under Puerto Rico law. Id. The letters also informed Plaintiffs that they had the right to request pretermination hearings and explained to them the process that would follow if such hearings were requested:

> If you are interested in this Hearing, you must request it in writing within a period of 15 days as of notification of this letter.... After the aforementioned term or after receiving the Report from the Hearing Examiner who presides the Hearing, if you so request, we will notify you the final decision to which you are legally entitled.

Docket # 20-1, p. 6. Nevertheless, Plaintiffs contend that the hearings were a sham and served merely to rubber-stamp Alvarez's decision to demote them. Id. In fact, despite the hearings, Plaintiffs were demoted to their previous positions. Docket # 1.

Plaintiffs appealed the demotions to the SIFC Board of Appeals (the "Board"). Docket # 20-1. But while the appeals were pending, they filed the instant case. Here, they seek damages, attorney's fees, and injunctive relief "in the form of reinstatement to their former managerial career positions" and an order "for defendants to certify to the retirement system the correct information as per the actual salaries and contributions made . . . during the time that [Plaintiffs] held the annulled appointments and up to the date of their reinstatement." Id. at ¶¶ 3.36-3.40. Their claims are predicated on the the U.S. Constitution as well as on different Commonwealth statutes.

On June 20, 2011, Defendants moved the Court to abstain from the case in accordance with the Younger and Colorado River doctrines. See Docket ## 20 and 31, Exh. 1. Plaintiffs

countered that both abstention doctrines are narrow and that neither applies to this case. Docket ## 22 and 39. Below, the Court will address each doctrine seriatim.

**Applicable Law and Analysis**

*Younger Abstention*

Younger embodies the doctrine of "Our Federalism." Younger v. Harris, 401 U.S. 37, 43-45 (1971). "Since the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts." Id. at 43. The Younger doctrine is usually applied in suits that seek injunctive or declaratory relief. Rossi v. Gemma, 489 F.3d 26, 34 (1st Cir. 2007). But an action for damages can trigger Younger abstention, because it may lead to the federal court producing a ruling on the merits that would have on the state court proceedings the same practical effect as a declaratory judgment. Id. at 37.

Comity is the touchstone of "Our Federalism." See Younger, 401 U.S. at 44-45; Brown *ex rel.* Brown v. Day, 555 F.3d 882, 899-900 (10th Cir. 2009) (Tymkovich, J., dissenting) (explaining that comity was the "central theme" in Younger, reaffirmed in Huffman v. Pursue, 420 U.S. 592 (1975)). "Younger v. Harris and its progeny espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982).The notion that federal courts should hesitate before interfering with actions pending in state courts is, indeed, much older than the Younger case:

> Where a State court and a court of the United States may each take jurisdiction, the tribunal which first gets it holds it to the exclusion of the other, until its duty is fully performed and the jurisdiction invoked is exhausted: and this rule applies alike in both civil and criminal cases.

Taylor v. Taintor, 83 U.S. 366, 370 (1872).

**CIVIL NO. 11-1194 (SEC)**                                                                                                     Page 4

Nevertheless, Younger abstention is appropriate only if three conditions are met: (1) there is an ongoing state judicial proceeding; (2) the proceedings implicate and important state interest; and (3) there is an adequate opportunity in the state proceedings to raise federal constitutional challenges. Rossi, 489 F.3d at 34-35; see also Middlesex, 457 U.S. at 432. To satisfy the first prong of this analysis, in the context of administrative proceedings vis-a-vis federal suits under 42 U.S.C. § 1983, the First Circuit has unequivocally established that the pending administrative proceeding must be coercive in nature—i.e., state initiated enforcement proceedings in which participation is compulsory. Guillemard-Ginorio v. Contreras-Gomez, 585 F.3d 508, 520-23 (1st Cir. 2009); Kercado-Melendez v. Aponte-Roque, 829 F.2d 255, 260 (1st Cir. 1987). In that context, "the state proceeding is itself the wrong which the federal plaintiff seeks to correct...." Kercado-Melendez, 829 F.2d 260. Therefore, "[a]bstention is appropriate in such instances because... state courts should have the first opportunity to construe the constitutionality of their own proceedings. Minimal respect for the state processes, of course, precludes any presumption that the state courts will not safeguard federal constitutional rights." Id.

These considerations, however, are absent when an aggrieved, not the state, initiates the administrative proceeding. This type of proceedings, which are remedial in nature, yield to the Congressional intent behind § 1983 of interposing "the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law, whether that action be executive, legislative, or judicial." Ex parte Virginia, 100 U.S. 339, 346 (1880) (quoted in Patsy v. Board of Regents of State of Fla., 457 U.S. 496, 503 (1982). For these reasons, it is well settled that Younger is inapplicable in connection with remedial administrative proceedings. Guillemard-Ginorio, 585 F.3d 520-23; Kercado-Melendez, 829 F.2d 260.

The foregoing principles thwart Defendants' request for abstention in this case. First, the administrative proceedings at issue here were instituted to challenge the legality of a

personnel decision made at the CSIF, rather than to challenge the legality of the administrative process itself. Second, Plaintiffs, not the CSIF, initiated the administrative proceedings. In fact, a cursory review of the Board's decision clearly shows that the administrative proceedings are unrelated with efforts by the state to enforce its laws. Rather, the administrative proceedings revolve around the plight of a group of public employees who believe that rights afforded to them by state laws were improperly curtailed. Under these circumstances, Plaintiffs' complaint is immune to Younger, and the Court is compelled to entertain their case. Guillemard-Ginorio, 585 F.3d 520-23; Kercado-Melendez, 829 F.2d 260.

Defendants argue that this case is distinguishable from Guillemard-Ginorio and Kercado-Melendez. Docket # 31-1. They aver that in those two cases the administrative proceedings at issue were not ongoing when the abstention requests were presented. Id. And that "[i]n the present case, not only are the administrative proceedings in an advanced stage, but the Board of Appeals has already issued a decision and order confirming the nullifications." Id. at p. 4. Defendants, however, fail to address altogether the dichotomy between coercive and remedial proceedings that Guillemard-Ginorio and Kercado-Melendez delineate.[1] Defendants also ignore that the First Circuit, in Guillemard-Ginorio, rejected the exact same argument that they put forth here. In this regard, the Court stated:

> Although defendants point to the subsequent administrative appeal taken by plaintiffs before the OIC (and ultimately, to the Commonwealth courts), these post-hoc remedial proceedings initiated by the plaintiffs are not of the type to which deference under Younger applies. Rather, proceedings must be coercive, and in most-cases, state-initiated, in order to warrant abstention.

Guillemard-Ginorio, 585 F.3d 522. The closing remarks of the Court's discussion reemphasized the point : "Thus, in this case, by the time proceedings of substance on the merits began in federal court, the only pending state proceedings were the remedial

---

[1] Defendants rely incorrectly on cases and other materials that predate these decisions.

proceedings initiated by the plaintiffs. Absent the required type of ongoing state judicial proceedings, the first prong of the Younger analysis was not satisfied." Id. at 523. Accordingly, just as in Guillemard-Ginorio, Defendants contentions here fail, and their request for abstention under Younger is **DENIED**.[2]

*Colorado River Abstention*

In Colorado River Water Conservation v. United States, 424 U.S. 800 (1976), the United States Supreme Court established a narrow basis for district courts to stay or dismiss federal lawsuits in deference to parallel state proceedings. Therein, the Court held that in "exceptional circumstances," a federal court could decline jurisdiction based on "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Id. at 817. It further enumerated four factors to determine whether "exceptional circumstances" exist that warrant abstention: (1) whether either court has assumed jurisdiction over some *res;* (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation, and (4) the order in which the forums obtained jurisdiction. Id. at 818; see also Dibbs v. Gonsalves, 921 F.Supp. 44, 53 (D.P.R. 1996). Subsequently, the Court suggested two other factors: (5) whether state or federal law controls, and (6) the adequacy of the state forum to protect the parties' rights.

---

[2] As Plaintiffs correctly point out, this District routinely hears cases in which a plaintiff seeks relief under § 1983 for an adverse employment decision while the same employment decision is under appeal before an administrative agency. Defendants have failed to cite a single case in which Younger has precluded this practice, and the Court is aware of none. Moreover, Defendants have provided the Court with no good argument to counter Plaintiffs' accurate observation that the causes of action raised in this forum are different from the ones at issue at the administrative level. Similarly, the Court is unpersuaded by Defendants' contentions that the issues presented in the administrative proceedings involve important state-interests. Therefore, even though the Court's analysis need not reach the remaining prongs of the Younger test, the aforementioned remarks also weigh against Defendants' abstention request.

**CIVIL NO. 11-1194 (SEC)**                                                                 Page 7

---

Mose H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 26 (1983). Some courts, including those in this Circuit, have also considered (7) the vexatious or reactive nature of the federal lawsuit as well as (8) the principles underlying removal jurisdiction. Id. at 17, n. 20; see also United States v. Fairway Capital Corp., 483 F.3d 34, 40 (1st Cir. 2007); Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 915 F.2d 7, 12 (1 Cir. 1990); Valle-Arce v. P.R. Ports Auth., 585 F.Supp. 2d 246, 251 (D.P.R. 2008).

Courts, however, should stay or dismiss cases under this doctrine with great caution. Dibbs, 921 F. Supp. at 53. Thus "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." Valle-Arce, 585 F. Supp. 2d 251 (citing Colorado River, 424 U.S. at 813). As a matter of fact, "[o]f all the abstention doctrines, [Colorado River] is to be approached with the most caution, with '[o]nly the clearest of justifications' warranting dismissal." Jimenez v. Rodriguez-Pagan, 597 F.3d 18, 27 (1st Cir. 2010) (quoting Colorado River, 424 U.S. at 819).

On this point, the Supreme Court has noted "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," and warned that "only the clearest of justifications will warrant dismissal." Dibbs, 921 F. Supp. at 53 (quoting Colorado River, 424 U.S. at 817 & 819). Therefore, courts may weigh any single factor differently, depending on the case, and no factor is determinative or exhaustive. Id. (citing Colorado River, 424 U.S. at 818-819); see also Valle-Arce, 585 F. Supp. 2d 251. It must be a "carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise...." Dibbs, 921 F. Supp. at 53 (quoting Colorado River, 424 U.S. at 818-819); see also Jimenez, 597 F.3d at 28.

Additionally, although district courts have discretion to dismiss or stay proceedings when there is parallel litigation pending in another forum, Valle-Arce, 585 F. Supp. 2d at 250, "the decision whether to dismiss a federal action because of parallel state-court litigation

does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." Moses H. Cone, 460 U.S. at 16. As a result, "the cases that satisfy this test are few and far between." Jimenez, 597 F.3d at 28.

The First Circuit has held that the Colorado River abstention doctrine applies if a two-part test is satisfied. Valle-Arce, 585 F. Supp. 2d at 250 (citing H&R Block Tax Services, Inc. v. Rivera Alicea, 570 F.Supp.2d 255, 266 (D.P.R. 2008). The court must first determine whether the actions in the state and federal forums are parallel, that is, "if they involve the same parties and substantially identical claims, raising nearly identical allegations and issues." Id. (internal quotations omitted). Second, the court must consider and balance a number of factors to determine whether the case falls under the "exceptional circumstances" test set forth in Colorado River. Id. at 250-51. Therefore, "the presence of parallel litigation in state court will not in and of itself merit abstention in federal court." Jimenez, 597 F.3d at 27.

Upon reviewing the record, the Court quickly notes that the First Circuit's two-part test just highlighted is not met in this case. First, the cases initiated at the administrative and federal forums present different legal issues. For example, the issues before the administrative forum are (1) violation of procedural due process in the formulation of charges; (2) the legality of the appointments and the presumption of correctness of the SIFC's actions; (3) the SIFC's right to regulate career appointments under Puerto Rico law; (4) *res judicata* and collateral estoppel of a prior decision by the Supreme Court of Puerto Rico; and (5) political discrimination. Docket # 20-1. In contrast, this Court has been asked to determine whether the SIFC abridged Plaintiffs' equal protection and substantive due process rights as well as rights to certain pension contributions. Docket # 1. Second, the claims raised in the administrative forum are predicated on state laws while most of the claims presented here arise under the U.S. Constitution. Lastly, the remedies available to

Plaintiffs in this Court—e.g., compensatory damages, punitive damages and attorney's fees—are much broader than those available to them at the administrative level.

Defendants nonetheless contend that "[t]he first part of the two-prong test is met in this case." Docket # 20. They reason that the issues pending at the administrative level—e.g., the validity of an internal announcement to fill government positions, the Merit Principle impact on such limited postings, and its relation, if any, with any proprietary interest in the affected positions—must be adjudicated by this Court to determine whether Plaintiffs' constitutional claims are meritorious. Id. at p. 9. At any rate, even if Defendants were correct on this point, the fact remains that the causes of action, as well as the remedies, that Plaintiffs pursue in this forum are completely different to the ones in play at the administrative level. Therefore, Defendants' Colorado River request fails the first prong of Valle-Arce.

The same holds true about the second prong of Valle-Arce, which calls for an analysis of the factors set forth in the "exceptional circumstances test" of Colorado River. Out of the eight factors of the "exceptional circumstances" test, the Court can dismiss swiftly factors one (whether jurisdiction over some *res* has been assumed); two (the inconvenience of the federal forum), seven (the vexatious or contrived nature of the federal claim); and eight (principles underlying removal jurisdiction). Regarding factor one, no *res* is involved in this case. As to factor two, the federal forum is located within a half an hour drive from the state forums that would have jurisdiction over Plaintiffs' administrative claims. Factor seven fails because there is absolutely no evidence on the record to conclude that Plaintiffs' claims are of a vexatious or contrived nature. Lastly, factor eight is inapposite here because Plaintiffs originally filed their complaint in federal court.

Regarding factor three (the desirability of avoiding piecemeal litigation), Defendants contend that "the Court should abstain [from] intervening in this case until the legality [of]... the decision of declaring null and void all appointments made by internal announcements has

been revised by the state administrative and judicial proceedings." Docket # 20, p. 9. They see this issue as one unresolved by Puerto Rico law, and advance the following general propositions: (1) that "abstention has been favored in order to avoid piecemeal litigation where a case involved numerous unresolved issues of Puerto Rico law," Tartak v. Del Placio, 2010 U.S. Dist. Lexis 105251, 27-28 (D.P.R. 2010); and (2) that "[t]he risk of piecemeal litigation arises when the ruling from the state court would render the federal court's opinion merely advisory, or vice-versa." Valle-Arce, 585 F.Supp. 2d 252. Defendants, however, once again ignore the fact that the causes of action pending, and the remedies sought, at the state and the federal forums are different. More important yet, Defendants fail to note that Plaintiffs' federal claims are based, in part, on the discriminatory application of the nullity decisions; therefore, whether such decisions were valid is not determinative in this forum.[3] Accordingly, Defendants' arguments regarding factor three fail.

The same reasons weigh heavily against Defendants' contentions in connection with factors four (the order in which the forums obtained jurisdiction), five (whether state or federal law controls), and six (the adequacy of the state forum to protect the parties' rights). In other words, even though the state administrative proceedings began first, Plaintiffs' federal claims are not implicated at the administrative level, and, due to Plaintiffs' England reservation, their federal claims will not be adjudicated until this case is over.[4] Furthermore, although this Court may have to entertain issues of state law to adjudicate some of Plaintiffs' claims, federal law governs the bulk of the issues pending in this case as well as most of the remedies sought.

---

[3] Here and at the administrative level, Plaintiffs have affirmatively asserted their right under England v. La. Bd. Of Med. Examiners, 375 U.S. 411 (1964) to have their federal claims decided by a federal court. Docket # 1, p. 15 n. 15. Therefore, this Court will entertain Plaintiffs' claims sooner or later.

[4] These circumstances make factor six irrelevant.

Having failed both prongs of the <u>Valle-Arce</u> test, Defendants' <u>Colorado River</u> request is **DENIED**.

**Conclusion**

For the foregoing reasons, Defendants' motion is **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 1st day of August, 2011.

                                               s/ *Salvador E. Casellas*
                                               SALVADOR E. CASELLAS
                                               U.S. Senior District Judge