IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ADELA JOUBERT-VAZQUEZ, *et al.*

    Plaintiffs,

          v.

ZOIME ALVAREZ-RUBIO, et al.

    Defendants.

Civil No. 11-1194 (SEC)

**OPINION and ORDER**

Before the Court are defendants' motion to dismiss (Docket # 58), and plaintiffs' opposition thereto (Dockets # 19 and 60). For the reasons discussed below, defendants' motion is **GRANTED in part and DENIED in part**.

**Factual and Procedural Background**[1]

According to the complaint, plaintiffs ("Plaintiffs") are employees of the Puerto Rico State Insurance Fund Corporation ("SIFC") who were demoted from career managerial positions. Docket # 51. Plaintiffs were appointed to these positions between 2003 and 2008 pursuant to an internal job announcement procedure (so-called closed job announcements) whereby only SIFC employees qualified to compete for the vacancies. Id. Prior to their internal appointments, Plaintiffs had held career positions at the SIFC—some managerial, some not. Id.

Defendants are the SIFC itself; the SIFC Administrator, Zoimé Alvarez-Rubio ("Alvarez"); and the SIFC Director of Human Resources, Saúl Rivera-Rivera, ("Rivera") (collectively "Defendants"). Id. Shortly after taking office, Alvarez ordered an audit of the

---

[1] Although the factual background of this case has been discussed before (Docket # 46), it is restated here for the sake of clarity.

**CIVIL NO. 11-1194 (SEC)**  Page 2

appointments made at the SIFC between January 2001 and December 2008. Id. Allegedly, she commissioned some of her most trusted lieutenants to gather information about the political affiliations of SIFC managerial employees appointed during the previous Popular Democratic Party Administrations ("PDP"). Id. Moreover, Plaintiffs allege that the period from 2001 to 2008 was chosen for the audit to spare employees appointed by New Progressive Party ("NPP") Administrations. Id. Plaintiffs also aver that the goal of this scheme, shared by Alvarez and Rivera, was to replace employees loyal to the PDP with employees loyal to the NPP and Governor Luis Fortuño. Id.

To that end, Plaintiffs were served with "letters of intent to demote," stating that their appointments were legal nullities, because the vacancies had not been publicly announced, as purportedly required under SIFC regulations and state law. Id. The letters also informed Plaintiffs that they had the right to request pretermination hearings and explained to them the process that would follow if such hearings were requested. Docket # 20-1, p. 6. Nevertheless, Plaintiffs contend that the hearings were a sham and served merely to rubber-stamp Alvarez's decision to demote them. Id. In fact, despite the hearings, Plaintiffs were demoted to their previous positions. Docket # 51.

Plaintiffs appealed the demotions to the SIFC Board of Appeals (the "Board"). Docket # 20-1. But while the appeals were pending, they filed the instant case, seeking damages, attorney's fees, and injunctive relief "in the form of reinstatement to their former managerial career positions" and an order "for defendants to certify to the retirement system the correct information as per the actual salaries and contributions made . . . during the time that [Plaintiffs] held the annulled appointments and up to the date of their reinstatement." Docket # 51, ¶¶ 3.44-.45, respectively. Their claims are predicated on the Equal Protection Clause,

**CIVIL NO. 11-1194 (SEC)**                                                                                                  Page 3

---

the Due Process Clause, and the Contract Clause of the U.S. Constitution as well as on the Constitution and laws of Puerto Rico.

Three months into the case, Defendants moved to dismiss, arguing that Plaintiffs' complaint fails to state a claim upon which relief can be granted. Docket # 58. Id. Plaintiffs timely opposed each of Defendants' contentions. Dockets # 19 and 60.

**Standard of Review**

To survive a Rule 12(b)(6) motion to dismiss, Plaintiffs' "well-pleaded facts must possess enough heft to show that [they are] entitled to relief." Clark v. Boscher, 514 F. 3d 107, 112 (1st Cir. 2008).[2] In evaluating whether Plaintiffs are entitled to relief, the court must accept as true all "well-pleaded facts [and indulge] all reasonable inferences" in plaintiff's favor. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). The First Circuit has held that "dismissal for failure to state a claim is appropriate if the complaint fails to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F. 3d 301, 305(1st Cir. 2008). Courts "may augment the facts in the complaint by reference to documents annexed to the complaint or fairly incorporated into it, and matters susceptible to judicial notice." Id. at 305-306. Nevertheless, in judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." LaChapelle v. Berkshire Life

---

[2] Fed. R. Civ. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to allow the defendant *fair notice* of what the claim is and the grounds upon which it rests. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007).

**CIVIL NO. 11-1194 (SEC)**                                                                 Page 4

---

Ins., 142 F.3d 507, 508 (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir.1996)); Buck v. American Airlines, Inc., 476 F. 3d 29, 33 (1st Cir. 2007); see also Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999). Thus, Plaintiffs must rely on more than unsupported conclusions or interpretations of law, as these will be rejected. Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (citing Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).

Moreover, "even under the liberal pleading standards of Fed R. Civ. P. 8, the Supreme Court has recently held that to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" Twombly, 550 U.S. at 559, *cited in* Rodríguez-Ortíz v. Margo Caribe, Inc., 490 F.3d 92 (1st Cir. 2007). Although complaints do not need detailed factual allegations, the plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Twombly, 550 U.S. at 556.

In Ashcroft v. Iqbal, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), the Supreme Court reaffirmed *Twombly* and clarified that two underlying principles must guide a court's assessment of the adequacy of pleadings when evaluating whether a complaint can survive a Rule 12(b)(6) motion. See Iqbal, 129 S. Ct. at 1949-50. First, the court must identify any conclusory allegations in the complaint as such allegations are not entitled to an assumption of truth. Id. at 1949. Specifically, the court is not obligated to accept legal conclusions set forth as factual allegations in the complaint. Moreover, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555); see also Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011) ("[S]ome allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory to the factual."). In other words, "[a] plaintiff is not entitled to 'proceed perforce'

by virtue of allegations that merely parrot the elements of the cause of action." Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1,12 (1st Cir. 2011).

Second, a complaint survives only if it states a plausible claim for relief. Id. (citing Twombly, 550 U.S. at 556). Thus, any nonconclusory factual allegations in the complaint, accepted as true, must be sufficient to give the claim facial plausibility. Id. A claim has facial plausibility when the pleaded facts allow the court to reasonably infer that the defendant is liable for the specific misconduct alleged. Id. at 1949, 1952. Such inferences must amount to more than a sheer possibility and be as plausible as any obvious alternative explanation. Id. at 1949, 1951. Plausibility is a context-specific determination that requires the court to draw on its judicial experience and common sense. Id. at 1950.

In sum, a plaintiff's obligation to "provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citing Twombly, 550 U.S. at 555). "[F]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true." Parker v. Hurley, 514 F. 3d 87, 95 (1st Cir. 2008).

**Applicable Law and Analysis**

Plaintiffs' claims under the U.S. Constitution are premised on 42 U.S.C. § 1983, which "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 394 (1989). To withstand dismissal for failure to state a claim under § 1983, a complaint must allege (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that such conduct deprived the plaintiff of his rights, privileges, or immunities secured by the Constitution or laws of the United States. Gutierrez-Rodriguez v.

**CIVIL NO. 11-1194 (SEC)**                                                                                           Page 6

Cartagena, 882 F. 2d 553, 559 (1st Cir. 1989). The second prong of the inquiry is in turn two-folded: (1) there must be an actual deprivation of a federally protected right, and (2) the conduct complained of must have been causally connected to the deprivation. Id.

In this case, Plaintiffs' complaint easily satisfies the first prong of the foregoing requirements. Their complaint alleges that co-defendants Alvarez and Rivera, acting as SIFC officials, devised and carried out the actions giving rise to this suit. Likewise, these allegations also satisfy the causality requisite of § 1983. Defendants' motion is therefore deficient as to these points.

Matters are a bit different in connection with the second prong of the § 1983 analysis. On this front, Defendants contend that Plaintiffs' complaint fails to properly allege that federally protected rights were abridged. Plaintiffs argue otherwise; accordingly, an analysis of the specific rights at issue is in order.

*The Equal Protection Claims*

Plaintiffs premise their first cause of action on the Equal Protection Clause of the U.S. Constitution. Under this clause, "persons similarly situated must be accorded similar governmental treatment." Marrero-Gutierrez v. Molina, 491 F.3d 1, 9 (1st Cir. 2007). To state a claim for an equal protection violation, a plaintiff must allege that "compared with others similarly situated, she was selectively treated based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Id. The inquiry whether a plaintiff is "similarly situated" with others is fact intensive and contextual: "the test is whether an objective person would see two people similarly situated based upon the incident and context in question." Id. (citing Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 21 (1st Cir. 1999)).

**CIVIL NO. 11-1194 (SEC)**                                                                 Page 7

Here, Plaintiffs' complaint alleges that "Defendants' actions (i.e., the mass demotion of the plaintiffs) put [P]laintiffs into a protected class of [closed job announcement appointees] who received a markedly different and insidiously intentional different treatment from that received by those in a similar position who did not belong to their protected class." Docket # 1, ¶ 4.4. Plaintiffs support this allegation with the following factual averments: (1) that Plaintiffs were appointed pursuant to closed job announcements between 2001 and 2008; (2) that the appointments were made during PDP administrations; (3) that employees appointed by NPP administrations through closed job announcements prior to 2001 and after 2008 were not demoted or investigated; and (4) that Defendants purposely devised and executed the scheme to affect as many employees affiliated to the PDP as possible, in contravention of the Equal Protection clause of the U.S. Constitution. Based on these allegations, the Court finds that Plaintiffs' complaint ably pleads an Equal Protection claim and that Defendants' contentions to the contrary are unavailing. E.g., Clements v. Fashing, 457 U.S. 957, 966-67 (1982) (stating that a classification based on political beliefs or other protected First Amendment rights contravenes the Equal Protection Clause). Accordingly, Defendants' motion to dismiss Plaintiffs' equal protection claims is **DENIED**.

*The Substantive Due Process Claims*

Plaintiffs' second cause of action arises under the Substantive Due Process Clause of the U.S. Constitution. There are two theories under which a plaintiff may bring a substantive due process claim. Cruz-Erazo v. Rivera-Montañez, 212 F.3d 617, 622 (1st Cir. 2000). Under the first, a plaintiff must demonstrate a deprivation of an identified liberty or property interest protected by the Fourteenth Amendment of the U.S. Constitution. Id. Under the second, a plaintiff is not required to prove the deprivation of a specific liberty or property interest, but, rather, she must prove that the state's conduct "shocks the conscience." Id.

State actions that shock the conscience encompass those that are "arbitrary and capricious, . . . those that run counter to 'the concept of ordered liberty,' or those which, in context, appear 'shocking or violative of universal standards of decency.'" Id. (citations omitted). Moreover, a substantive due process claim may rest not only on the perceived procedural flaws of the particular governmental action, but also on the idea that the government's action, notwithstanding the procedures employed, is in itself impermissible. Amsden v. Moran, 904 F.2d 748, 753 (1st Cir. 1990). The conduct alleged to shock the conscience, however, must "do more than offend some fastidious squeamishness or private sentimentalism . . . ." Rochin v. California, 342 U.S. 165, 172 (1952).

For example, courts have found substantive due process violations under the following factual scenarios:

> a student blinded in one eye when a coach intentionally struck him in the head with a metal weight; a teacher's fabrication of sexual abuse charges against a father, resulting in loss of contact with his child for three years; rape by a police officer in connection with a car stop; a 57-day unlawful detention in the face of repeated requests for release;police officers aiding a third-party in shooting the plaintiff; an intentional assault by a police officer who struck a pretrial detainee twice in the head and threatened to kill him; and a principal forcing his way into a room where a student was hiding, grabbing her from the floor, throwing her against the wall, and slapping her.

Cummings v. McIntire, 271 F.3d 341, 346 (1st Cir. 2001) (citations omitted). Substantive due process claims are therefore limited to severe cases. Id. Holding otherwise would lower the very high threshold for constitutional wrongdoing and transform the Constitution into "a surrogate for local tort law or state statutory and administrative remedies." Id.

Here, the complaint essentially alleges that Plaintiffs "were purportedly demoted to lower-ranking positions on the alleged grounds that their appointment process failed to comply with a statute (Law 32) that was not in effect at the time when they were appointed."

Docket # 51, ¶ 5.1. Thus, the complaint states that the determinative factor for Plaintiffs' demotions was the fact that their appointments had been made by a contrary political administration. Id. at ¶ 3.26. If credited, these allegations undoubtedly present a troublesome scenario. Nevertheless, as Defendants correctly point out, the allegations fail to rise to the conscience-shocking level generally required to state a claim for a substantive due process violation. Cf. Pandolfi De Rinaldis v. Varela-Llavona, 62 F.Supp. 2d 426, 434 (D.P.R. 1999) (holding that the improper termination of a public employee fell short of the level necessary to be "conscience shocking"); see also Learnard v. Inhabitants of Van Buren, 164 F. Supp. 2d 35, 41 n. 2 (D. Me. 2001) (quoting Albright v. Oliver, 510 U.S. 266, 272 (1994)) ("Substantive due process claims generally have something to do with 'matters relating to marriage, family, procreation, and the right to bodily integrity' rather than property or employment issues."). Plaintiffs fail to address this point altogether; therefore, their substantive due process claims are **DISMISSED**.

*The Contract Clause Claims*

Plaintiffs' next cause of action is premised on the Contract Clause of the U.S. Constitution. Under this clause, states are prohibited from passing "any . . . Law impairing the Obligations of Contracts . . . ." U.S. Const. Art. 1, § 10. "Though the Framers apparently had in mind only purely private contracts . . . the Clause routinely has been applied to contracts between states and private parties." McGrath v. Rhode Island Retirement Board, 88 F.3d 12, 16 (1st Cir. 1996).

To make a claim under the Contract Clause, a two part test must be satisfied. Parker v. Wakelin, 123 F.3d 1, 4-5 (1st Cir. 1997). First, the court must decide whether "a change in state law has resulted in the substantial impairment of a contractual relationship." Id. Next, the court must determine "whether or not the impairment is nevertheless justified as

reasonable and necessary to serve an important public interest." Id. Affirmative answers to these questions "compel a court to abrogate the proposed application of the challenged state law." McGrath, 88 F.3d 12 at 16. But this outcome follows only if the alleged impairment arises out of a legislative action. Rooker v. Fidelity Trust Co., 261 U.S. 114, 118 (1923).

In this case, Plaintiffs' complaint fails to allege the "legislative action" threshold requirement. Instead, Plaintiffs urge the Court, without supporting legal authority, to overlook such a fatal deficiency and to focus on the fact that "[D]efendants justified the nullification of [P]lantiffs' promotions by invoking a Puerto Rico statute . . . ." Docket # 19, p. 10. Plaintiffs' proposition, however, falls outside the contours of the Contract Clause. See e.g., Futura Development of Puerto Rico v. Estado Libre Asociado de Puerto Rico, 276 F.Supp.2d 228, 241 (D.P.R. 2003) (Casellas, J.) (denying Contract Clause claim challenging the conduct of individuals, rather than a particular legislative action); see also New Orleans Waterworks Co. v. La. Sugar Ref. Co., 125 U.S. 18, 30 (1888) (holding that the Contract Clause "is aimed at the legislative power of the State, and not at the decisions of its courts, the acts of administrative or executive boards or officers, or the doings of corporations or individuals."). Plaintiffs' cause of action under the Contract Clause is therefore **DISMISSED**.

*The Eleventh Amendment Immunity Defense*

Defendants also move to dismiss Plaintiffs' complaint on the ground that the SIFC and its officials are entitled to Eleventh Amendment Immunity. In pertinent part, the Eleventh Amendment provides: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Am. XI. This protection is primarily intended to safeguard both the States' coffers as

**CIVIL NO. 11-1194 (SEC)**                                                                                                                             **Page 11**

---

well as their "'dignity' interest as . . . sovereign[s] in not being haled into federal court." Fresenius Med. Care Cardiovascular Res., Inc. v. P.R. Caribbean Cardiovascular Ctr., 322 F.3d 56, 61 (1st Cir. 2003). For these reasons, the U.S. Supreme Court has stated that the Eleventh Amendment must be understood "to stand not so much for what it says, but for the presupposition . . . which it confirms." Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996). "That presupposition . . . has two parts: first, that each State is a sovereign entity in our federal system; and second, that '[i]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent.'" Alden v. Maine, 527 U.S. 706, 729 (1999) (quoting Hans v. Louisiana, 134 U.S. 1, 10 (1890)). Stated succinctly, the general rule is that "the Constitution does not provide for federal jurisdiction over suits against nonconsenting States." Kimel v. Florida Board of Regents, 528 U.S. 62, 72-73 (2000).

The Commonwealth of Puerto Rico, along with the fifty states of the Union, is shielded by the Eleventh Amendment. Maysonet-Robles v. Cabrero, 323 F.3d 43, 48 n.3 (1st Cir. 2003); Jusino Mercado v. Commonwealth of Puerto Rico, 214 F.3d 34, 39 (1st Cir. 2000). In this case, however, the Commonwealth is not a party; rather one of its public corporations is. A state corporation may enjoy Eleventh Amendment immunity only if found to be an arm of the state, and the burden of persuasion rests with the party invoking the Amendment. Wojcik v. Mass. State Lottery Comm'n, 300 F.3d 92, 99 (1st Cir. 2002).

In these situations, the relevant two-pronged inquiry begins with an analysis of the entity's structure—*i.e.*, "whether the state had structured the [entity] to be an arm of the state." Fresenius , 322 F.3d at 65. Four factors inform this prong of the analysis:

> 1. extent of state control including through the appointment of board members and the state's power to veto board actions or enlarge the entity's responsibilities;

>2. how the enabling and implementing legislation characterized the entity and how the state courts have viewed the entity;
>
>3. whether the entity's functions are readily classifiable as state functions or local or non-governmental functions; and
>
>4. whether the state bore legal liability for the entity's debts.

Id. (citing Hess v. Port Authority Trans-Hudson Corp., 513 U.S. 30, 49-50 (1994)).

If the four factors are inconclusive, the second prong of the analysis comes into play. Id. At this stage, "the vulnerability of the state's purse is the most salient factor in the Eleventh Amendment determination." Id. Put differently, when the second prong of the analysis is reached, "the dispositive question concerns the risk that the damages will be paid from the public treasury." Id. (citing Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct & Sewer Auth., 991 F.2d 935, 939-40 (1st Cir. 1993)).

In this case, Defendants rely heavily on the unpublished opinion in Berrios-Trinidad v. Ruiz-Nazario, Civ. No. 08-1809, 2009 WL 866864 (D.P.R. Mar. 27, 2009).[3] There, in concluding that the SIFC was an arm of the state, the court held:

>the SIF[C] undoubtedly exercises a significant government function. Specifically, the Executive Branch of the government controls the SIF[C] and appoints its manager, the SIF[C]'s budget must be submitted for the approval of the Governor, and the SIF[C] must present an annual report to the Legislature of Puerto Rico. The SIF[C] may not acquire property, except under certain limitations imposed by statute. Although the SIF[C]'s employees were granted the right to collective bargaining, they are not empowered to strike. Finally, the merit principle of the Personnel Act for the Commonwealth of Puerto Rico permeates the recruitment and permanency of the SIF[C]'s workforce.

Id. at *1 (citations omitted). Although the Berrios-Trinidad discussion is certainly relevant

---

[3] As of today, Berrios-Trinidad is the only judicial opinion analyzing whether the SIFC qualifies for Eleventh Amendment protection.

**CIVIL NO. 11-1194 (SEC)**                                                                 Page 13

to the first prong of the aforementioned analysis, it fails to paint the whole picture as to the SIFC's structure. For example, the SIFC's enabling act allows it to "[p]repare, formalize, and award agreements, leases, contracts and other instruments . . . with the Commonwealth of Puerto Rico and any of its political subdivisions, agencies or political instrumentalities." P.R. Laws Ann. Tit. 11 § 1b-1(f). The SIFC may also "sue and be sued in its name." Id. § 1b-1(d). Moreover, once appointed, the SIFC's Board of Directors has complete authority to run the corporation's affairs, with the Commonwealth enjoying no veto power over its decisions. P.R. Laws Ann. tit. 11 § 1b-2 and 4. And even though the Commonwealth may remove Board members, it can only do so "for just cause, upon the filing of charges and the opportunity to be heard." Id. § 1b-2. In other words, Berrios-Trinidad alone is insufficient to persuade this Court that the SIFC was structured to be an arm of the state. Fresenius, 322 F.3d at 65.[4] Thus, the dispositive inquiry becomes whether the Commonwealth would end up holding the bag if Plaintiffs prevail in this suit. Id. at 68.

Defendants fall far short on this front. In fact, Defendants concede that any judgment rendered against the SIFC will be satisfied from its funds. See Docket # 58, pgs. 28-29. They, however, argue that such a scenario would impact the Commonwealth's coffers indirectly, because the SIFC, from time to time, transfers funds to local governmental agencies. Id. However creative or accurate Defendants' argument may be, well settled law establishes that an indirect or ancillary impact on a state's treasury is insufficient to activate the Eleventh Amendment. See e.g., Cash v. Granville County Bd. of Educ., 242 F.3d 219, 224-25 (4th Cir. 2001). Hence, without more, the Court cannot grant the relief requested. As Plaintiffs'

---

[4] Other than citing Berrios-Trinidad, Defendants provide no argument whatsoever in connection with the first prong of the Fresenius analysis. Therefore, the foregoing discussion suffices to reject their contentions as to this prong. Wojcik, 300 F.3d at 99 (stating that the party requesting Eleventh Amendment protection bears the burden of proof).

remarks fitly state: "[t]he Commonwealth may use the SIF[C] as a cash cow in the same way that any shareholder may withdraw dividends from a private corporation. A much different thing would be for the SIF[C] to receive Commonwealth funding, which of course never happens." Docket # 19, p. 16.

*The Qualified Immunity Defense*

Defendants also contend that the Qualified Immunity doctrine bars Plaintiffs' personal capacity claims against co-defendants Alvarez and Rivera. Qualified immunity is an affirmative defense against personal liability which may be raised by state officials. Whitfield v. Melendez-Rivera, 431 F. 3d 1, 6 (1st Cir. 2005). It "provides a safe harbor for public officials acting under the color of state law who would otherwise be liable under 42 U.S.C. §1983 for infringing the constitutional rights of private parties." Id.; see also Anderson v. Creighton, 483 U.S. 635, 638 (1987). In Pearson v. Callahan, 555 U.S. 223, 231-33 (2009), the Supreme Court reiterated that the qualified immunity inquiry is a two-part test. That is, a "court must decide (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." Id. The second step of the qualified immunity analysis, in turn, has two aspects. One aspect focuses on the clarity of the law at the time of the alleged civil rights violation, and the other focuses more concretely on the facts of the particular case and whether a reasonable defendant would have understood that his conduct violated the plaintiffs' constitutional rights. Id.

Here, the Court already established that Plaintiffs' complaint ably pleads claims under the Equal Protection Clause of the U.S. Constitution. Furthermore, the case law highlighted above shows that Plaintiffs' equal protection rights were clearly established at the time of the events underlying the complaint. Nevertheless, on the pleadings alone, the Court is unable to determine whether an objective official in Defendants' position would have

**CIVIL NO. 11-1194 (SEC)**                                                                                                    Page 15

reasonably concluded that his actions were contrary to the Equal Protection Clause. The Court therefore holds that Defendants are not entitled to qualified immunity on the Equal Protections claims against them. If appropriate, Defendants may reassert this defense at a later stage.

*The Supplemental State-Law Claims*

Because Defendants' plea for the dismissal of Plaintiffs' state-law claims assumes the dismissal of all of their federal-law claims, the Court need not address the same. See Newman v. Burgin, 930 F.2d 955, 961 (1st Cir. 1990).

**Conclusion**

For the foregoing reasons, Plaintiffs' causes of action under the Due Process and Contract Clause of the U.S. Constitution are **DISMISSED with prejudice**. Defendants' motion to dismiss as to the Equal Protection Clause is **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 24th day of October, 2011.

                                                                    s/ Salvador E. Casellas
                                                                    SALVADOR E. CASELLAS
                                                                    U.S. Senior District Judge