# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| PEDRO ORTIZ-SANTIAGO, <br><br> Plaintiff, <br><br> v. <br><br> ZOIME ALVAREZ-RUBIO, ET AL., <br><br> Defendants. | **Civil No. 11-1087 (SEC)** |
| ADELA JOUBERT-VAZQUEZ, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> ZOIME ALVAREZ-RUBIO, ET AL., <br><br> Defendants. | **Civil No. 11-1194 (SEC)** |

## OPINION AND ORDER

Before the Court are the defendants' motion for summary judgment (Docket # 111), the plaintiffs' opposition thereto (Docket # 118), and the parties' respective replies (Dockets # 129 and 134). After reviewing the filings and the applicable law, the defendants' motion is **GRANTED**.

### Factual and Procedural Background

Sixty-one employees (collectively, Plaintiffs) of the Puerto Rico State Insurance Fund Corporation (SIFC) who were demoted from career managerial positions, filed this § 1983 action against the SIFC itself; the SIFC's Administrator, Zoimé Alvarez-Rubio (Alvarez);

and the SIFC's Director of Human Resources from January 8, 2009 to February 23, 2012 and employee of the SIFC since 1978, Saúl Rivera-Rivera (Rivera) (collectively, Defendants), alleging violations under the Equal Protection Clause, the Due Process Clause, and the Contract Clause of the U.S. Constitution, as well as under the Constitution and laws of Puerto Rico. Dockets # 51 & 111-1, ¶ 4. After considering a motion to dismiss filed by Defendants, in 2011, the Court dismissed with prejudice Plaintiffs' claims under the Due Process and Contract Clauses of the U.S. Constitution. See Docket # 80.[1] Therefore, the only surviving federal claim is Plaintiffs' Equal Protection claim.[2]

Defendants now move for summary judgment, arguing that Plaintiffs have failed to demonstrate "that they belong to a class that has been unequally treated, and that [Defendants] intentionally devised and executed a scheme to affect only employees [affiliated to the Popular Democratic Party]." Docket # 111, p. 2. After reviewing the filings, the Court states below the relevant uncontested facts in the light most favorable to Plaintiffs.

In January 2009, after the Puerto Rico general elections, the New Progressive Party (NPP) took control of the Commonwealth's government and the newly elected governor appointed co-defendant Alvarez as the SIFC's Administrator. Statement of Uncontested Facts (SUF), Docket # 111-1, ¶ 2. She started in her position on January 2, 2009. Id. ¶ 2. During 2009, Alvarez ordered Rivera to review all SIFC's personnel records and all personnel transactions carried out between 2001 and 2008, to ensure that all human resources regulations and procedures were followed during that period. Id. ¶¶ 4, 5 & 240.

---

[1] See Joubert-Vázquez v. Alvarez-Rubio, 820 F. Supp. 2d 289 (D.P.R. 2011).
[2] For related cases see: Aponte-Ramos v. Alvarez-Rubio, No. 10-2191; Diaz-Vázquez v. Alvarez-Rubio, No. 11-1405, 2013 WL 6281455, at *9 (D.P.R. Oct. 22, 2013); Franco-Figueroa v. State Insurance Fund, No. 11-1025, 2013 WL 4434252 (D.P.R. Aug. 14, 213).

This was part of Alvarez's organizational administrative work plan and a decision made by the then governmental administration. Id. ¶¶ 240 & 242. The personnel actions encompassed within said time-period were audited, and the investigation revealed that 232 appointments were made through internal-job postings or closed-job announcements. Id. ¶ 246; Audit Report –Human Resources Actions– of the SIFC, dated October 28, 2009 (Audit Report), p. 2. The Audit Report showed that the appointments were made in violation of the SIFC's Personnel Regulation (SIFC's Regulation) and the merit principle, because the officers in charge of the recruiting process at that time had to publicly announce the positions. SUF ¶ 256.

The Human Resources Department then proceeded to notify all of the affected employees, including Plaintiffs, of the Administrators' intent to nullify their appointments. Id. ¶ 249. Among the annulled transactions, was Rivera's own appointment to the career position of Officer of Personnel Affairs II in the Payroll Office. Id. ¶ 250. Plaintiffs received a letter notifying them of the Administrator's intent to annul their appointments because they were all done through a proscribed "internal job posting." Id. ¶¶ 7-238. The letter further stated that since they previously held a career position, they had the right to be reinstated to their previous position, and that they had the right to request an administrative hearing to contest the decision. Id.

All Plaintiffs requested an administrative hearing, but the Official Examiners recommended the annulment of Plaintiffs' appointments. Id.; see also SUF ¶ 239. Alvarez adopted the Official Examiners' decisions and ordered the annulment of

Plaintiffs' appointments, as recommended in the Audit Report dated October 28, 2009. Id. ¶ 249. This suit followed.

### Standard of Review

The Court may grant a motion for summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Kelley v. Correctional Medical Services, Inc., 707 F.3d 108, 155 (1st Cir. 2013). At this stage, it is axiomatic that courts "may not weigh the evidence," Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994), but must construe the record in the "light most flattering" to the nonmovant. Soto-Padro v. Public Bldgs. Authority, 675 F.3d 1 (1st Cir. 2012). Courts must similarly resolve all reasonable inferences in favor of the party opposing summary judgment. Id.

Because the summary judgment inquiry is grounded in the factual evidence available, one of its principal purposes "is to isolate and dispose of factually unsupported claims or defenses." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The Court may therefore consider "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(A). Inadmissible evidence, such as hearsay evidence considered for the truth of the matter asserted, is excluded at this stage. Hannon v. Beard, 645 F.3d 45, 49 (1st Cir. 2011).

Once the party moving for summary judgment has established an absence of material facts in dispute and that judgment is proper as a matter of law, the burden shifts to the nonmovant to "affirmatively point to specific facts that demonstrate the existence of an

authentic dispute." <u>Kenney v. Floyd</u>, 700 F.3d 604, 608 (1st Cir. 2012) (internal quotation marks omitted). A dispute is genuine if a reasonable factfinder "could resolve the point in favor of the non-moving party." <u>Johnson v. Univ. of P.R.</u>, 714 F.3d 48, 52 (1st Cir. 2013) (internal quotation marks omitted). A material fact, in turn, is one that may affect the outcome of the suit under the governing law. <u>Maymí v. P.R. Ports Auth.</u>, 515 F.3d 20, 25 (1st Cir. 2008). The nonmovant may not rest on conclusory allegations and improbable inferences. <u>Shafmaster v. U.S.</u>, 707 F.3d 130, 135 (1st Cir. 2013); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986). Neither "effusive rhetoric," <u>Cadle Co. v. Hayes</u>, 116 F.3d 957, 960 (1st Cir. 1997) nor "arguments woven from the gossamer strands of speculation and surmise," <u>RTR Technologies, Inc. v. Helming</u>, 707 F.3d 84, 93 (1st Cir. 2013), suffice to forestall the entry of summary judgment. So the nonmovant must "point to competent evidence and specific facts to stave off summary judgment." <u>Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London</u>, 637 F.3d 53, 56 (1st Cir. 2011). Failure to shoulder this burden, "allows the summary judgment engine to operate at full throttle." <u>Lawton v. State Mut. Life Assur. Co.</u>, 101 F.3d 218, 223 (1st Cir. 1996).

### Applicable Law and Analysis

The Equal Protection Clause of the U.S. Constitution provides that "[n]o State shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. "With reference to a governmental action, this language has been interpreted to mean that 'all persons similarly situated should be treated alike.'" <u>Pagán v. Calderón</u>, 448 F.3d 16, 34 (1st Cir. 2006) (quoting <u>City of Cleburne v. Cleburne Living Ctr., Inc.</u>, 473 U.S. 432, 439 (1985)). "Its protections extend to both legislative and executive

conduct." Id. The purpose of the Equal Protection Clause is "'to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (quoting Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 445 (1923).

Here, Plaintiffs expressly state that their "equal protection claim is one of selective enforcement." Docket # 118, p. 2-3. Plaintiffs do not contest whether their appointments were made in violation of the SIFC's Regulation and thus were correctly annulled. In fact, they do not propound their selective enforcement claim in relation to other employees appointed during the 2001-2008 period. They even admit that all personnel transactions made at the SIFC in which career managerial employees were appointed through internal job postings during this period, without exceptions, were declared null as a result of Alvarez's decision. SUF ¶ 259. They solely contend that this legal determination "was selectively applied to them while similarly-situated employees appointed prior to the year 2001 and after the year 2008 were not subjected to the application of said legal principle." Docket # 118. Accordingly, the Court's inquiry turns on whether or not Section 14.1 of the SIFC's Regulation and other applicable laws and regulations, were unequally applied to Plaintiffs in violation of the Equal Protection Clause, as compared to other similarly situated employees appointed before 2001 and after 2008.[3] Thus, for purposes of this opinion, the

_____

[3] Section 14.1 regulates the promotion policy for SIFC's employees. Section 14.1 states the following:

> As a general rule, in order to strengthen the merit principle by recruiting the best qualified individuals, positions shall be filled by means of open competition. Both employees of the Corporation as well as candidates from outside the Corporation

Court will assume that Plaintiffs' appointments were correctly annulled. See González-Segarra v. Corporación del Fondo del Seguro del Estado, 2013 T.S.P.R. 34 (certified translation provided by the parties at Docket # 184) (concluding that the appointments made via internal job postings were in violation of Section 14.1 and the merit principle).

A selective enforcement claim under the Equal Protection Clause depends on proof that "(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Freeman v. Town of Hudson, 714 F.3d 29, 38 (1st Cir. 2013) (quoting Rubinovitz v. Rogato, 60 F.3d 906, 909-10 (1st Cir. 1995)).

To meet the first prong of the equal protection analysis –whether the person, compared with others similarly situated, was selectively treated– a plaintiff must first "'identify and relate specific instances where persons situated similarly 'in all relevant aspects' were treated differently, instances which have the capacity to demonstrate that [plaintiffs] were 'singled … out for unlawful oppression.'"" Rubinovitz, 60 F.3d at 910 (quoting Dartmouth Review v. Dartmouth College, 889 F.2d 13, 19 (1st Cir. 1989)). The inquiry whether a plaintiff is "similarly situated" with others is fact intensive and contextual: the test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated. SBT Holdings, LLC v. Town of Westminster, 547 F.3d 28, 34 (1st Cir. 2008) (citing Barrington Cove Ltd. P'ship v.

may participate, depending on their qualifications. The Administrator may identify the position classes that, due to their nature, require a certain taype of experience, and in these cases the competition may be limited to employees and former employees who have such experience in the Corporation.

Rhode Island Housing and Mortgage and Finance Corp., 246 F.3d 1, 8 (1st Cir. 2001));

Rubinovitz, 60 F.3d at 910. The "relevant aspects" are those factual elements "which

determine whether reasoned analogy supports, or demands, a like result." Barrington Cove,

246 F.3d at 8. Although the formula is not always susceptible to precise demarcation, the

case law makes clear that the burdens of production and persuasion must be shouldered by

the party asserting the equal protection violation. Cordi-Allen v. Conlon, 494 F.3d 245, 250

(1st Cir. 2007) (citing Barrington Cove, 246 F.3d at 8). "To carry the burden of proving

substantial similarity, 'plaintiffs must show an extremely high degree of similarity between

themselves and the persons to whom they compare themselves." Id. (quoting Clubside, Inc.

v. Valentin, 468 F.3d 144, 159 (2nd Cir. 2006)). Exact correlation is not required, but there

must be sufficient proof on the relevant aspects of the comparison to warrant a reasonable

inference of substantial similarity. Id. (quoting Tapalian v. Tusino, 377 F.3d 1, 6 (1st Cir.

2004)).

*Employees appointed before 2001*

   Plaintiffs first identify a group of employees appointed to career positions prior to

2001 without open or closed job announcements. See Plaintiffs' response to SUF ("RSUF"),

Docket # 118-1, ¶ 258.   That is, without any announcements at all. In support of this

contention they submit Luis R. Ramos-Navarro's statement under penalty of perjury, which

states that between the years 1995-1996, the former SIFC administrator appointed "a large

number of physicians to managerial career positions (now union positions) without any job

announcements whatsoever." Id.; Docket # 118-6, ¶ 11.[4] They also submit four letters dated between 1995 and 1996, stating that the SIFC's administrator appointed four individuals to temporary positions, and six letters dated between 1996 and 1997 informing six employees –four out of those six are the same individuals who were appointed previously to temporary positions– about a status change in their employment from temporary to regular.[5] Docket # 135-1, p. 1-12. The Court is unpersuaded by Plaintiffs' argument.

A careful review of the record shows that none of the individuals appointed prior to 2001 may be considered as similarly situated to Plaintiffs "in all relevant aspects." And, even if the court were to find that they were similarly situated, there is no evidence that they were treated differently. Unlike Plaitiffs, "these employees either experienced a 'status change' in their current position from temporary to permanent or were appointed to short-term, temporary positions." Diaz-Vázquez v. Alvarez-Rubio, No. 11-1405, 2013 WL 6281455, at *9 (D.P.R. Oct. 22, 2013). Plaintiffs were appointed to career managerial positions from other career positions. Moreover, Plaintiffs were appointed through internal job announcements, and the employees appointed prior to 2001 were appointed "without any job announcements." Id. Plaintiffs admit that, before 2003, the mechanism of internal job postings for recruiting career managerial employees was never used at the SIFC. SUF ¶ 257. According to the letters on record, the status change from temporary to regular was "in

---

[4] Luis R. Ramos-Navarro, began working at the SIFC on July 16, 1992. He has held several positions at the SIFC. At the moment of the filing of this motion for summary judgment, he was the Chief of the Human Resources Classification and Compensation Division. Docket # 118-6, ¶ 2-4.

[5] They also submit change report forms from the SIFC's Human Resources Office noting status changes from temporary to permanent positions. Most of the forms, however, pertain to the same employees that were notified of their temporary appointment or status change by letter. The other two change reports do not contain sufficient information for this court to consider as additional evidence. See Docket # 135-1, p. 13-20.

response to the public policy of offering regular appointments to temporary employees in entry level positions of fixed duration with permanent duties as applied in the case of medical personnel and unionized employees." Docket # 135-1. These appointments were made between 1995 and 1997, that is, more than five years before Plaintiffs' appointments. (The first appointment was in September 2003.) More important, there is no information on record about the legal and regulatory framework at that time. Cf. Cordi-Allen, 494 F.3d at 252 (stating, in the land-use context, that "in order to show that other parties were similarly situated to them –[plaintiff] needed to adduce evidence sufficient to establish factual as well as regulatory similarity").

Therefore, Plaintiffs have not met their burdens of production and persuasion. See Cordi-Allen v. Conlon, 494 F.3d 245, 250 (1st Cir. 2007) (citing Barrington Cove, 246 F.3d at 8). In light of the difference in the circumstances and timing surrounding the appointments, any tenous common link between Plaintiffs' appointments and those made prior to 2001 is insufficient to demonstrate "the extremely high degree of similarity" necessary to carry plaintiffs' burden of showing that these individuals are similarly situated to themselves. Diaz-Vázquez, 2013 WL 6281455, at *9; see also id. (stating that "courts must be sensitive to the possibility that differential treatment –especially differential treatment following a time lag– may indicate a change in policy rather than an intent to discriminate").

But even if the court were to find Plaintiffs similarly situated "in all relevant aspects," there is no evidence that they were treated differently. According to Plaintiffs, "defendants' applied their narrow view of the merit principle to plaintiffs' appointments,

which featured competition among SIFC's employees, yet did not apply the same legal rule to appointments where there was no competition whatsoever." Docket # 118, p. 6. Plaintiffs posit that, in Defendants' view, career status cannot be attained unless an open job announcement is posted, or some administrative procedures are undertaken prior to the issuance of closed job announcements, and that "they applied these principles solely to appointments made during the PDP administrations between 2001-2008." They further argue that they need not establish that "defendants' … approach to the merit principle is legally incorrect, only that it was selectively applied to them while similarly-situated employees appointed prior to the year 2001 and after the year 2008 were not subjected to the application of said legal principle." Docket # 118, p. 4-5. This argument also fails to persuade.

Plaintiffs' appointments were annulled because they were made in violation of Section 14.1 of the SIFC's Regulation, which states as follows:

> As a general rule, in order to strengthen the merit principle by recruiting the best qualified individuals, positions shall be filled by means of open competition. Both employees of the Corporation as well as candidates from outside the Corporation may participate, depending on their qualifications. The Administrator may identify the position classes that, due to their nature, require a certain type of experience, and in these cases the competition may be limited to employees and former employees who have such experience in the Corporation.[6]

---

[6] The Public Service Human Resources Administration Act (Human Resources Act), P.R. Laws Ann. tit. 3, §§ 1461 et seq., excludes from its applicability employees of the SIFC. See P.R. Laws Ann. tit. 3, § 4161e.  Moreover, the Compensation System for Work-Related Accidents Act, P.R. Laws Ann. tit. 11, §§ 1 et seq., which is the SIFC's organic law, requires the Administrator to administer and establish the SIFC's own personnel system. It further provides that "the personnel system to be established shall be based on the merit principle and shall conform to the rules and regulations adopted to such effects by the Administrator." P.R. Laws Ann. tit. 11, § 1b-4(g).

According to Defendants' interpretation of Section 14.1 and other applicable provisions, closed job announcements shall be used only when "the corresponding technical analysis [is] done stating the grounds and justification of the appointing authority." Audit Report, Docket # 111-4, p. 9.

In González-Segarra, 2013 T.S.P.R. 34, the Puerto Rico Supreme Court determined that, although the Administrator had discretion to authorize closed-job announcements for an entire "class position" -not for individual positions- said discretion required a prior analysis stating its grounds and justifications. Id. at 31-32. Since the Administrator had provided neither a valid justification nor any analysis in limiting competition for plaintiffs' appointments, and the eligibility requirements for the positions at issue did not require a particular experience tied to the specific duties that would be carried out, the Supreme Court determined that they were done in violation of Section 14.1 of the SIFC's Regulation, and ran counter to the merit principle. Id.[7]

Therefore, "Defendants' view" is rather Defendants' legal interpretation of, among others, the SIFC's Regulation. The SIFC's Regulation was adopted in January 2000. There is no information or evidence on record as to the regulations in force prior to this date and applicable to those appointments made between 1995 and 1997. Because the merit principle does not operate in a vacuum, Plaintiffs cannot shoulder their summary judgment burden of showing that Defendants did not apply the same laws and regulations to the appointments made prior to the adoption of the SIFC's Regulation. Although at this stage, facts must be viewed in the light most favorable to the nonmovants, and all reasonable inferences must be

---

[7] Only 20 out of the 232 employees whose appointments were annulled as a result of Alvarez's audit were parties to this case.

drawn in their favor, the nonmovants may not rest on "conclusory allegations, improbable inferences, and unsupported speculation." Shafmaster v. United States, 707 F.3d 130 (1st Cir. 2013). Therefore, even if they were indeed similarly situated and Defendants had included the 1992-2000 period in their audit, there is no basis in the record for the Court to determine that they were "singled … out for unlawful oppression." See Rubinovitz, 60 F.3d at 909-10.

### Employees appointed after January 1, 2009

In an additional attempt to identify equivalent incidents and similar protagonists, see id., Plaintiffs argue that after January 1, 2009, closed-job announcements were used for union personnel. RSUF ¶ 258. Under penalty of perjury, Ramos-Navarro states that "[w]hile the SIFC discontinued the use of closed-job announcements for managerial personnel after the year 2009, it has appointed many career union employees through closed job announcement [which for union employees are identified as "promotion job announcements"] during that same period." Docket # 118-6, ¶ 12.  However, as Defendants correctly point out, according to the collective bargaining agreement (CBA), all promotions for unionized positions are made through closed-job announcements. Docket # 129, p. 7-8. So it still remains uncontested that, except for union employees, closed job postings have not been used after January 1, 2009 for recruiting career managerial employees. SUF ¶ 258 and RSUF ¶ 258.

This distinction is crucial. Job postings for SIFC's union employees are regulated by the CBA. See Docket # 137-6. The CBA provides that "entry level job postings will be those where there will be free competition for the entire public, including employees of the

[SIFC]." Id. at 6. Nevertheless, it makes clear that "[j]ob postings for promotions will be solely for the employees comprised within the appropriate unit." Id.

Through collective bargaining, Puerto Rico unionized employees may obtain more and better benefits than the minimum benefits provided by the applicable laws. See e.g. J.R.T. v. Vigilantes, 125 P.R. Dec. 581, 592 (1990) (P.R. Offic. Trans.); DACo v. AFSCME, 185 D.P.R. 1, 39 (2012). Excluding promotions from the regular process of open-job announcements may be considered one of those benefits. Clearly, unionized employees who were promoted through closed-job announcements in accordance with the CBA may not be compared with non-unionized employees whose appointments were allegedly made in violation of the SIFC's laws and regulations. Once again, Plaintiffs fail to identify a group similarly situated to them. See Diaz-Vázquez v. Alvarez-Rubio, 2013 WL 6281455, at *9.

Therefore, viewing the facts and making all reasonable inferences in favor of Plaintiffs, there are no genuine issues of material fact that preclude the Court from granting this motion for summary judgment. Accordingly, the motion for summary judgment is **GRANTED,** and Plaintiffs' selective enforcement claim is **DISMISSED with prejudice**.

*Supplemental jurisdiction claims*

Finally, Defendants argue that, absent any federal claims, this court should refrain from entertaining Plaintiffs' state-law claims. Docket # 111, p. 23. Plaintiffs have provided no argument against this contention. Docket # 118, p. 8.

Recently, in Redondo Const. Corp. v. Izquierdo, 662 F.3d 42, 49 (1st Cir. 2011), the First Circuit recapitulated the well settled rule that "[i]f the federal claims are dismissed before trial, . . . .  the state claims should be dismissed as well." Id.  (quoting United Mine

Workers v. Gibbs, 383 U.S. 715, 726, (1966)). It reminded, however, that such general principle is no "mandatory rule to be applied inflexibly in all cases[,]" id. (citation omitted), punctuating that "[d]istrict court[s] must exercise 'informed discretion' when deciding whether to exercise supplemental jurisdiction over state law claims." Id. (quoting Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256-57 (1st Cir. 1996)). Such a determination implicates a weighing of several factors: to wit, comity, judicial economy, convenience, and fairness. Id. (citations omitted). Having evaluated the foregoing factors, and because Plaintiffs have failed to oppose Defendants' request, the Court declines to exercise supplemental jurisdiction over the state-law claims in this case. Comity will be served by permitting the Commonwealth courts to resolve such issues of local concern.

**Conclusion**

For the reasons stated above, Defendants' motion for summary judgment is **GRANTED**. Plaintiffs' remaining federal claim is therefore **DISMISSED with prejudice**, and their state law claims are **DISMISSED without prejudice**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 14th of March, 2014.